497 F.2d 702
 7 Fair Empl.Prac.Cas. 1111, 7 Empl. Prac.
Dec. P 9360
O'Neal W. KOGER (on behalf of himself as an individual
plaintiff, and as a member of a class for all present and
prospective Negro employees of the Social Security
Administration as a class), Appellants,
v.
Robert M. BALL, Commissioner of the Social Security
Administration and the Department of Health,
Education and Welfare, and Secretary,
Department of Health,
Education and
Welfare, Appellees.
 No. 73-2332.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1974.
Decided May 10, 1974.
 
 Luther C. West, Baltimore, Md. (West, Frame & Barnstein, Gerald A. Smith and Johnson, Smith, Opara & Erlich, Baltimore, Md., on brief), for appellants.
 Thomas L. Crowe, Asst. U.S. Atty. (George Beall, U.S. Atty., D. Md., on brief), for appellees.
 Before BRYAN, Senior Circuit Judge, and WINTER and BUTZNER, Circuit judges.
 BUTZNER, Circuit Judge:
 
 
 1
 The narrow question presented by this appeal is whether a federal employee whose complaint of racial discrimination was pending administratively on March 24, 1972, the effective date of the Equal Employment Opportunity Act of 1972,[1] may seek judicial redress. The district court, ruling that it lacked subject matter jurisdiction to hear a complaint alleging discrimination that occurred before the effective date of the Act, and alternatively, that the complaint failed to state a claim on which relief can be granted, dismissed the employee's suit.[2] We hold that the procedural provisions of the Act embrace those complaints that were being administratively considered at the time of its enactment. Accordingly, we reverse and remand the case for further proceedings.
 
 
 2
 * The procedural background of this case and the facts pertinent to this appeal can be briefly stated. At all relevant times, Executive Order 11478 and its supplemental regulations were in effect. The Order reiterates the government's policy of assuring persons of all races equal opportunity to federal employment. In addition to encouraging the resolution of grievances on an informal basis, the President directed the Civil Service Commission and each department to provide for the prompt and impartial consideration of complaints of discrimination.[3]
 
 
 3
 On November 30, 1971, the appellant, O'Neal W. Koger, applied for a better paying position in the Social Security Administration where he was employed. After discovering he had not been selected for the post, he lodged a complaint alleging that he had been denied promotion because of his race. On February 22, 1972, as the first step in the grievance procedure prescribed by the regulations, he wrote a letter to the director of the bureau where he worked.[4] The director denied relief and suggested that if Koger wished to pursue his complaint he should contact an equal opportunity employment counselor.[5] The conferences with the counselor proved futile, so on April 28, 1972, Koger submitted a formal complaint to the Secretary of the Department of Health, Education and Welfare.[6] Since no action had been taken on the complaint by November 17, 1972, Koger's lawyer made an inquiry to the Department. On December 4, 1972, the assistant general counsel replied that the complaint was still under review, but he added that Koger could now file a civil action without further notification from the Department. Accordingly, Koger, having waited 180 days from the institution of his complaint without receiving a decision, filed this action under the 1972 Act, which had become effective the previous March while he was pursuing his administrative remedies.
 
 II
 
 4
 Although the federal government has long barred its departments and agencies from discrimination against their employees on the ground of race, judicial enforcement of this policy was uncertain and ineffective before 1972.[7] To remedy this situation, Congress amended Title VII of the Civil Rights Act of 1964[8] by the Equal Opportunity Act of 1972,[9] which among other provisions, added a new section pertaining to government workers.[10] This section emphasizes that federal employment shall be 'free from any discrimination based on race, color, religion, sex, or national origin.' It refines the responsibilities and administrative procedures necessary for the departments, agencies, and Civil Service Commission 'to maintain an affirmative program of equal employment opportunity,' and it negates any intention to relieve government officials of their existing responsibilities 'as required by the Constitution . . . statutes (and) Executive Order 11478.' Bearing directly on this case, it provides in 717(c) that after an aggrieved employee has exhausted his administrative remedies on a complaint brought pursuant to Executive Order 11478, he may file a civil action against the head of his department or agency.[11]
 
 
 5
 The legislative history establishes that the 1972 Act did not create a new substantive right for federal employees. The constitution, statutes, and executive orders previously granted them the right to work without racial discrimination.[12] Section 717(c) simply created a new remedy for the enforcement of this existing right. Senator Cranston, a proponent of the legislation, explained its function as follows:
 
 
 6
 'Subsection (c) of the new section 717 creates a remedy in Federal district court-- comparable to private employment actions-- for any employee who has exhausted the equal employment opportunity complaint procedure within his Federal agency.'[13]
 
 
 7
 Procedural statutes that affect remedies are generally applicable to cases pending at the time of enactment.[14] Of course, retrospective application is not allowed when it will work a manifest injustice by destroying a vested right.[15] But this exception plays no role here because the government has no vested right to discriminate against its employees on the basis of race.[16] The general rule has been applied to cases affected by either the enlargement or the contraction of jurisdiction even though the causes of action arose before the enactment of the statutes that changed the court's jurisdiction.[17] Mr. Justice Holmes succinctly explained why a statute that 'takes away no substantive right, but simply changes the tribunal that is to hear the case' should be applied to pending cases. Retrospective application is appropriate when the statute 'evinces a change of policy' arising out of a 'consideration (that) applies with the same force to all cases.'[18] Though Mr. Justice Holmes spoke of the transfer of jurisdiction from the judiciary to the executive, his reasoning applies precisely to this case where we deal with the transfer of jurisdiction from the executive to the judiciary.
 
 
 8
 Section 717(c) evinces a congressional policy to make the courts the final tribunal for the resolution of controversies over charges of discrimination after all administrative remedies have been exhausted. This policy applies with equal reason to discrimination that occurred either before or after the passage of the Act when the earlier discrimination was the subject of administrative proceedings at the time of enactment. In both instances, the wrong is similar, and the requirement for exhaustion of administrative remedies is the same.
 
 
 9
 Section 717(c), read literally, applies to Koger's pending claim. It authorized him to file a civil action against the head of his department because in the language of the statute: 1) his 'complaint of discrimination based on race . . . (was) brought pursuant to . . . Executive Order 11478 . . .'; 2) he waited 'one hundred and eighty days from the filing of the initial charge with the department, agency, or unit . . .' before filing suit; and 3) he was 'aggrieved . . . by the failure to take final action on his complaint.'[19] Koger's complaint, therefore, states a cause of action over which the district court has jurisdiction, unless his suit is barred by an exception to the general rule governing the retrospective application of procedural statutes.
 
 III
 
 10
 The government advances three reasons why 717(c) should not be applied to pending cases of discrimination. It relies primarily on a footnote in Cohen v. Chesterfield County School Board,[20] in which we said, 'Rules and practices of (a public school board) in effect when the (board) was exempt from the Equal Employment Opportunity Act cannot be the basis for a violation of that Act.'[21] The government contends that since it was similarly exempt until March 1972, Koger's suit, by analogy, cannot be maintained.
 
 
 11
 Cohen, however, is not controlling. There the issue concerned the validity of a school board's regulation pertaining to maternity leave. For this reason, the court's inquiry was directed to ascertaining the teacher's substantive rights. The corollary of the teacher's right was the obligation placed on the board. Obviously, during the time the board was exempt, the Act placed no obligation on it; consequently, the Act afforded the teacher no complementary right.[22] Because the footnote dealt with the board's duty and the teacher's substantive right, it must be read in this context.
 
 
 12
 In contrast, Koger's right to be free from racial discrimination does not depend on the 1972 Act. Executive Order 11478 previously imposed a duty on the officials of his department to promote employees without regard to their race. The Act provided Koger a supplemental remedy for a violation of the existing duty defined by the Order. We conclude, therefore, that Cohen furnishes no precedent for dismissing Koger's complaint.
 
 
 13
 The government's second reason for avoiding retrospective application of 717(c) is based on 14 of the 1972 Act.[23] This section provides that amendments made to 706 of the Civil Rights Act of 1964[24] shall be applicable to charges pending before the Economic Opportunity Commission. The government contends that 14 indicates that only the amendments to 706 were to be given retroactive effect, and therefore 717(c) cannot be applied retrospectively. In the leading case supporting the government, the court ruled that a federal employee's complaint of pre-Act discrimination failed to state a claim under the 1972 Act.[25] The court reasoned that 717(c) of the Act created a 'new claim' for federal employees. Since 717(c) is not an amendment of 706, the court concluded that the 'new claim' was applicable only to post-Act discrimination.
 
 
 14
 We agree that 717(c) is not an amendment to 706, but this does not settle the matter. The difficulty with the government's argument arises out of the failure to analyze the nature of the 'new claim' the Act was said to have created. If the phrase means only a new substantive right, it is inaccurate because a federal employee's right to be free from racial discrimination existed before the passage of the 1972 Act. If it includes-- as it should-- a new remedy to enforce an existing right, then under the general rule favoring retrospective application of procedural statutes, 717(c) should be applied to pending cases for the reasons mentioned in Part II.
 
 
 15
 Moreover, we find nothing in the legislative history to justify the inference that by making amendments to 706 retrospective, Congress intended all other provisions of the Act to be prospective. The 1972 amendments to 706 enlarged the power of the Economic Opportunity Commission and the Attorney General to deal effectively with discrimination in the private sector.[26] The House bill was silent concerning the application of the new provisions to pending charges against private employers,[27] and the Senate bill originally proposed that they should not be retroactive. However, at the request of the Justice Department, Senator Javits offered an amendment to apply the changes in 706 to charges pending before the Commission.[28]
 
 
 16
 The Senate, and later the House conferees, accepted Senator Javits' amendment without any discussion about its effect on the rights of federal employees.[29] Therefore, in the absence of any indication that Congress intended to alter the general rule that procedural statutes should be applied retrospectively, the legislative history furnishes no authority for limiting the application of 717(c) to post-Act discrimination.[30]
 
 
 17
 Finally, the government claims sovereign immunity, citing Gnotta v. United States,[31] which held that this doctrine was a defense to a complaint similar to Koger's. Assuming for the purposes of the government's argument, that Gnotta is correct, we nevertheless find it inapposite. Gnotta was decided before the passage of the 1972 Act, and consequently it presented no occasion for considering whether 717(c) should be applied retroactively to abrogate the doctrine with respect to pending complaints of racial discrimination. Clearly, Congress gave its consent for suits to redress discrimination occurring after passage of the Act. Whether this consent extends to pending cases of pre-Act discrimination depends on the propriety of retrospective application of the Act. Thus, the government's plea of sovereign immunity does not resolve the issue; it simply restates the question in different words.
 
 
 18
 The only condition precedent to suit that Congress created was the exhaustion of administrative remedies, including those remedies that Executive Order 11478 made available both before and after the passage of the Act. Since Koger's pending case satisfied this condition precedent, the express language of 717(c) authorizes him to seek judicial relief.[32] In this respect, he stands in the same position as an employee who exhausted his administrative remedies for a claim of post-Act discrimination. Therefore, no rational purpose is served by invoking the doctrine of sovereign immunity to bar judicial adjudication of Koger's complaint simply because his pending case involved pre-Act discrimination.[33] We conclude that Congress, being fully aware of the general rule favoring retrospective application of procedural statutes, intended by enacting 717(c) to grant employees consent to sue for redress of pending cases of pre-Act discrimination.[34]
 
 
 19
 The judgment is reversed, and the case is remanded for further proceedings.
 
 
 
 [1]
 Pub.L.No. 92-261, 86 Stat. 103 (March 24, 1972), 42 U.S.C. 2000e et seq. (1972)
 
 
 [2]
 Other courts reaching the same conclusion include: Hill-Vincent v. Richardson, 359 F.Supp. 308 (N.D.Ill.1973); Freeman v. Defense Constr. Supply Center, 5 FEP Cases 505 (S.D.Ohio 1972); Mosely v. United States, 6 FEP Cases 462 (S.D.Cal.1973); Palmer v. Rogers, 6 FEP Cases 892 (D.D.C.1973)
 In contrast, however, a majority of the courts considering the problem have applied the Act retrospectively: Walker v. Kleindienst, 357 F.Supp. 749 (D.D.C.1973); Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973); Johnson v. Froehlke, 5 FEP Cases 1138 (D.Md.1973); Pointer v. Sampson, 6 FEP Cases 9 (D.D.C.1973); Harrison v. Butz, 375 F.Supp. 1056 (D.D.C.1973); Grubbs v. Butz, 6 FEP Cases 432 (D.D.C.1973); Henderson v. Defense Contract Admin. Region, 370 F.Supp. 180 (S.D.N.Y.1973); Johnson v. Lybecker, 7 FEP Cases 279 (D.Or.1974); Gautier v. Weinberger, 7 FEP Cases 473 (D.D.C.1973).
 
 
 [3]
 Exec. Order 11478 became effective on August 7, 1969. 3 C.F.R., 1969 Comp. 133, 42 U.S.C. 2000e note (1973). The Civil Service Regulations which implemented the Order became effective on January 1, 1971. 5 C.F.R. 713.201 et seq. (1971). The preamble to the Order states:
 'It has long been the policy of the United States Government to provide equal opportunity in Federal employment on the basis of merit and fitness and without discrimination because of race, color, religion, sex, or national origin. All recent Presidents have fully supported this policy, and have directed department and agency heads to adopt measures to make it a reality.'
 
 
 [4]
 Exec. Order 11478, 4; 5 C.F.R. 713.212(a) and 771.303(a) (1971)
 
 
 [5]
 5 C.F.R. 713.213 and 771.303(b)(2) (1971)
 
 
 [6]
 Exec. Order 11478, 4; 5 C.F.R. 771.309 (1971)
 
 
 [7]
 See generally, Walker v. Kleindienst, 357 F.Supp. 749, 751 (D.D.C.1973) (dictum)
 The legislative history of the 1972 Act discloses Congress' concern with the problem.
 'The prohibition against discrimination by the Federal Government, based upon the due process clause of the fifth amendment to the Constitution, was judicially recognized long before the enactment of the Civil Rights Act of 1964. (Bolling v. Sharpe, 347 U.S. 497, (74 S.Ct. 693, 98 L.Ed. 884) (1954)) And Congress itself has specifically provided that it is 'the policy of the United States to insure equal employment opportunities for Federal employees without discrimination because of race, color, religion, sex, or national origin . . ..' (5 U.S.C. 7151 (Supp. II 1965, 1966)).
 'The primary responsibility for implementing this stated national policy has rested with the Civil Service Commission, pursuant to Executive Order 11246 (1964) as clarified by Executive Order 11748.
 . . . .ry
 'Despite some progress that has been made in this area, the record is far from satisfactory. Statistical evidence shows that minorities and women continue to be excluded from large numbers of government jobs, particularly at the higher grade levels.' H.R.Rep.No. 92-238, 92d Cong., 2d sess. (1972), 2 U.S.Code Cong. & Admin.News, pp. 2137, 2157 (1972).
 
 
 [8]
 Pub.L.No. 88-352, 78 Stat. 253 (July 2, 1964), 42 U.S.C. 2000e et seq. (1972)
 
 
 [9]
 See n. 1, supra
 
 
 [10]
 The Equal Employment Opportunity Act of 1972, 717, 42 U.S.C. 2000e-16 (1972). All subsequent section references in the text are to the Act
 
 
 [11]
 Section 717(c), 42 U.S.C. 2000e-16(c) (1972), provides:
 'Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.'
 
 
 [12]
 See nn. 3 and 7, supra
 
 
 [13]
 118 Cong.Rec. 2279 (daily ed. Feb. 22, 1972)
 
 
 [14]
 In Sampeyreac v. United States, 32 U.S. (7 Peters) 222, 239, 8 L.Ed. 665 (1833), the Court said:
 'Considering the Act . . . as providing a remedy only, it is entirely unexceptionable. It has been repeatedly decided in this court that the retrospective operation of such a law forms no objection to it. Almost every law, providing a new remedy, affects and operates upon causes of action existing at the time the law is passed.'
 See also Thorpe v. Housing Authority of Durham, 393 U.S. 268, 281, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); United States v. Village Corp., 298 F.2d 816, 820 (4th Cir. 1962).
 
 
 [15]
 Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); see Thorpe v. Housing Authority of Durham, 393 U.S. 268, 282 n. 43, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) (dictum); 2 J. Sutherland, Statutory Construction 41.09 (4th ed. 1973)
 
 
 [16]
 Walker v. Kleindienst, 357 F.Supp. 749, 752 (D.D.C.1973), see also nn. 3 & 7, supra
 
 
 [17]
 Federal Reserve Bank of Richmond v. Kalin, 77 F.2d 50 (4th Cir. 1935) (jurisdiction enlarged); Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916) (jurisdiction withdrawn)
 
 
 [18]
 Hallowell v. Commons, 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409 (1916)
 
 
 [19]
 See n. 11, supra
 
 
 [20]
 Cohen v. Chesterfield County School Board, 474 F.2d 395-396, n. 1 (4th Cir. 1973), rev'd 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974)
 
 
 [21]
 Similar language is contained in a footnote of the Supreme Court's opinion. Cohen v. Chesterfield County School Board, 414 U.S. 632, 638, n. 8, 94 S.Ct. 791, 795, 39 L.Ed.2d 52 (1974)
 
 
 [22]
 Since the Act imposed no duty on the board at the time the teacher was placed on maternity leave, the Court considered her constitutional claim and held that the maternity leave regulation violated the due process clause of the fourteenth amendment. Cohen v. Chesterfield County School Board, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974)
 
 
 [23]
 Section 14, 42 U.S.C. 2000e-5 note (1972), provides:
 'The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act and all charges filed thereafter.'
 
 
 [24]
 42 U.S.C. 2000e-5(a) to (g) (1972)
 
 
 [25]
 Hill-Vincent v. Richardson, 359 F.Supp. 308 (N.D.Ill.1973). The court, however, ruled that the complaint stated a cause of action under the fifth amendment. 359 F.Supp. at 309
 
 
 [26]
 42 U.S.C. 2000e-5(a) to (g) (1972)
 
 
 [27]
 H.R.Conf.Rep.No. 92-899, 92d Cong., 2d sess., 2 U.S.Code Cong. & Admin.News 2179, 2185 (1972)
 
 
 [28]
 118 Cong.Rec. 2183 (daily ed. Feb. 21, 1972)
 
 
 [29]
 See nn. 27 and 28, supra
 
 
 [30]
 'Unless a contrary legislative intent appears, changes in statute law which pertain only to procedure are generally held to apply to pending cases.' 2 J. Sunderland, Statutory Construction 41.09 at 281 (4th ed. 1973)
 
 
 [31]
 Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970); accord, Manhattan-Bronx Postal Union v. Gronouski, 121 U.S.App.D.C. 321, 350 F.2d 451 (1965)
 
 
 [32]
 See n. 11, supra
 
 
 [33]
 Congressional intention to abolish the defense of sovereign immunity is disclosed in S.Rep.No. 92-415, 92d Cong., 1st Sess. 16 (1971):
 'An important adjunct to (administrative) responsibilities is the statutory provision of a private right of action in the courts by Federal employees who are not satisfied with the agency or Commission decision.
 '. . . The committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U.S. Government defense of sovereign immunity . . . The provisions adopted by the committee will (afford) . . . employees . . . the full rights available in the courts as are granted to individuals in the private sector under Title VII.'
 
 
 [34]
 Henderson v. Defense Contract Admin. Region, 370 F.Supp. 180, 181 (S.D.N.Y.1973)