Roger H. NEELY, Plaintiff,

v.

William E. SIMON, Secretary of the Treasury, et al., Defendants.

Civ. A. No. 76-1515.

United States District Court,
District of Columbia.

April 26, 1977.

Theodore Voorhees, Jr., Covington & Burling, Roderic V. O. Boggs, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., for the District of Columbia, Lawrence T. Bennett, Asst. U. S. Atty., Washington, D. C., for defendants.

MEMORANDUM OPINION AND ORDER

SIRICA, District Judge.

## I. BACKGROUND FACTS

This is an action in which plaintiff, Roger H. Neely, a black male, seeks declaratory, injunctive and monetary relief to remedy his dismissal as an employee of the Bureau of Printing and Engraving (the Bureau), a unit of the Department of the Treasury. Neely claims that his termination was in violation of Title VII of the Civil Rights Act, the first and fifth amendments to the Constitution and applicable rules and regulations of the Civil Service Commission (CSC). The matter is presently here on the motion of defendants to dismiss plaintiff's Title VII claim on the grounds that Title VII remedies are not retroactive to the incident in question.

The particulars of the controversy, as alleged, need not be fully detailed for present purposes. Suffice it to say that Neely was employed by the Bureau as a security guard from April 9, 1968 to July 20, 1971, at which time he was discharged for cause. Prior to his termination, Neely perceived that the Bureau was engaging in discriminatory employment practices that adversely affected low-level Bureau employees, who were predominantly black. Dissatisfied with the way Bureau officials were moving to remedy the situation, Neely lodged protests with his superiors in an effort to generate remedial action. These protests, Neely claims, led the Bureau to take reprisals against him in the form of a temporary suspension, citations for misconduct and, finally, dismissal.

By letter dated April 30, 1971, Neely received notice that the Bureau intended to remove him from his position for repeated acts of misconduct. On July 19, 1971, the Bureau issued a decision sustaining the specifications of misconduct and dismissing Neely effective the next day. Approximately a week later, Neely filed an application in District Court here to prevent the Bureau from discharging him, but this application was denied.[1] On appeal, the denial of the application was affirmed in a decision handed down May 15, 1974. 162 U.S.App.D.C. 19, 495 F.2d 1075.

In the meantime, Neely had filed an administrative appeal of his termination with the CSC. However, the CSC deferred consideration of the case until the Court of Appeals rendered its decision. Once that occurred, the appeal was reactivated. This appeal ultimately resulted in a decision, delivered by the CSC on July 14, 1976, that Neely's removal was entirely proper in light of the evidence supporting the specifications of misconduct. This lawsuit followed.

## II. DISCUSSION

The case is presently before the Court on defendants' motion to dismiss the action insofar as relief is sought on the basis of Title VII of the amended Civil Rights Act. 42 U.S.C. § 2000e–16(c) (Supp. V 1975). Defendants argue that dismissal is required for the reason that Title VII remedies are not available to Neely under the particular circumstances present here. The core of this argument is that Neely withdrew his claim of discrimination at the administrative level and, having done so, he is now barred from asserting it judicially.

Defendants build their argument from the foundation laid in *Womack v. Lynn*, 164 U.S.App.D.C. 198, 504 F.2d 267 (1974). In that case, the Court of Appeals for this Circuit adopted the reasoning of the Fourth Circuit in *Koger v. Ball*, 497 F.2d 702 (1974) to the effect that Title VII remedies extend to claims of discrimination that arose before the 1972 amendments to Title VII took effect on March 24, 1972, but if and only if the claims were "already pending" on the critical date. 164 U.S.App.D.C. at 200, 504 F.2d at 269. As defined in *Womack*, the term "already pending" means pending in either administrative or judicial proceedings. *Id.* Defendants argue that the application of *Womack* here requires dismissal of

---

1. The gist of this application was that the Bureau failed to conform to due process requirements by denying Neely a formal pre-termination hearing. It contained no allegations of racial discrimination.

the instant Title VII claim in that Neely withdrew his claim of discrimination prior to March 24, 1972. Neely disputes this.[2]

The focus of this dispute is on the meaning of, and circumstances surrounding, a letter drafted by James R. McCotter, then Neely's lawyer, and addressed to Herman Staiman, the then head of the CSC's Appeals Examining Office. This letter, dated August 5, 1971, was drafted shortly after Staiman had telephoned McCotter to discuss the manner in which the CSC should proceed with Neely's appeal. In it, McCotter advised Staiman that, on the basis of their earlier conversation, "we do not feel that the circumstances of this case require reference to the Bureau for an EEO investigation to determine if Mr. Neely was discriminated against because of race."

Defendants read this statement to mean that, by not seeking an EEO investigation, McCotter intended to withdraw Neely's claim of discrimination. The apparent basis for this reading is that CSC regulations prevailing at the time required that claims of racial discrimination be referred for investigation to the EEO office of the appropriate agency. According to defendants, had McCotter wanted to preserve the discrimination charge, he would not have bypassed the procedure for referring the matter back to the Bureau for EEO processing. Not having sought a reference back to the agency, McCotter should be deemed to have waived Neely's claim of discrimination.

While plausible, this argument is falsely premised. The underlying—and in the Court's view, mistaken—premise is that bypassing EEO investigation necessarily meant that McCotter wished to forego presentation of Neely's discrimination claim to the CSC. This, however, is at odds with the prevailing circumstances. As McCotter plainly stated in his August 5, 1971 letter, "Mr. Neely does not allege that he was terminated solely for racial reasons. However, he does contend that there were at least racial overtones to his termination. That is, it is our belief that Mr. Neely's termination was principally caused by his activities seeking to establish certain practices and procedures which would insure fair and equitable treatment for his follow employees at the Bureau, who are predominantly black." The clear implication from this statement is that McCotter, far from intending to *waive* the claim, meant to *press* Neely's claim of racial discrimination at the CSC.

Against this background, the reason why no EEO investigation was sought emerges clearly. In the Court's view, the reason for this lies in the fact that Neely's claim of discrimination was not typical of discrimination claims brought by federal employees who charge unequal treatment as a direct result of race. The Court understands that claims of this type had to be referred for EEC processing. In contrast, Neely's claim was of *indirect* discrimination, in that the Bureau took adverse action against him, not because of his race, but because of his activities in support of fellow employees, who were "predominantly black." Viewing Neely's complaint in this light, it is understandable why McCotter should have believed that the CSC was capable of handling the claim without first having to refer the matter back to the Bureau for investigation.

It may be that McCotter was mistaken in believing that Neely's claim of indirect discrimination could be processed without a reference to the agency. But this misunderstanding, in the Court's estimation, appears to have arisen as an incident to McCotter's earlier discussion with the CSC's Staiman. Moreover, before this mistake could be corrected, the CSC, over Neely's objections, deferred consideration of the en-

---

2. Neely also argues that, even if the Court should find that his discrimination claim was not administratively pending on the critical date in 1972, this defect was nevertheless cured when the CSC went ahead and processed it in 1974 and when the instant suit was timely filed thereafter. Contra, *Stephenson v. Simon*, 427

F.Supp. 467 (D.D.C., 1976). Because the Court finds that Neely did not withdraw his claim from administrative consideration, it need not consider what effect the CSC's action would have had on the availability of Title VII remedies if the claim had been withdrawn.

tire matter until Neely's lawsuit was resolved. Once that occurred in 1974, the CSC proceeded to process the appeal, eventually issuing a decision that found no discrimination by the Bureau in dismissing Neely. By so doing, the CSC tacitly indicated that the earlier failure to have the claim referred to the Bureau for EEO processing was not fatal to its later presentation.

The Court concurs in this judgment, although perhaps for different reasons. In arriving at this conclusion, the Court has taken precisely the same position as the CSC with regard to the vitality of Neely's claim: it merits examination. In short, to bar the claim on the authority of *Womack v. Lynn* would simply be unwarranted by the facts.

### III. ORDER

Accordingly, for the foregoing reasons, defendants' motion to dismiss the Title VII portion of plaintiff's complaint must be, and the same hereby is, denied.