UNITED STATES of America, Appellee,

v.

A. S. HOLCOMB, Appellant.

No. 80–1646.

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1981.

Decided June 8, 1981.

Norwood Robinson, Winston-Salem, N. C. (F. Joseph Treacy, Jr., Hudson, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., on brief), for appellant.

Raymond W. Fullerton, Asst. Gen. Counsel, Washington, D. C. (H. M. Michaux, Jr., U. S. Atty., Durham, N. C., John W. Stone, Jr., Benjamin H. White, Jr., Asst. U. S. Attys., Greensboro, N. C., Judith A. Wenker and Alexandra Maravel, Attys., U. S. Dept. of Agriculture, Washington, D. C., on brief), for appellee.

Before BUTZNER, PHILLIPS and MURNAGHAN, Circuit Judges.

PER CURIAM:

A. S. Holcomb sought in the district court judicial review of an administrative determination that he had violated the Horse Protection Act of 1970 (1970 Act) as modified by the Horse Protection Act Amendments of 1976 (1976 Amendments). The district court held that under the 1976 Amendments exclusive jurisdiction to review the administrative determination lay in the court of appeals, and accordingly gave summary judgment for the Government. This appeal presents the sole issue whether, as the district court held, the judicial review provisions of the 1976 Amendments applied to pending cases, hence specifically to Holcomb's. We agree with the district court that they did so apply, and affirm the dismissal.

I

On November 20, 1974, the Acting Administrator of the Animal and Plant Health Inspection Service of the United States Department of Agriculture, which administers the Horse Protection Act, filed a complaint against Holcomb. The complaint alleged that Holcomb had showed and exhibited a horse that had been "sored" in violation of the Act. Following two adjudicatory hearings in August and November 1975, an administrative law judge (ALJ) decided on April 27, 1976 that Holcomb committed the alleged violations and assessed a civil penalty of $500.00.

Holcomb appealed the ALJ's decision to the Judicial Officer of the Department of Agriculture. The Judicial Officer affirmed the findings of the ALJ and entered his decision and order on July 26, 1976. Holcomb filed a petition for reconsideration, which was denied on September 17, 1976.

The 1976 Amendments had become effective on July 13, 1976. At this point, although the ALJ had issued his decision, the appeal to the Judicial Officer of the Department of Agriculture was still pending, and was not decided until nearly two weeks after the 1976 Amendments became effective.

Following the denial of his petition for reconsideration, Holcomb did not initiate any proceedings for judicial review of the agency decision. On June 29, 1977, the United States filed this action to collect the $500 civil penalty imposed by the Department of Agriculture; Holcomb answered, and the parties filed cross-motions for summary judgment. Holcomb sought by his motion to have the district court—in that court's words—"review and reverse the administrative decision," apparently invoking as the appropriate standard for such review § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706. The Government's position was that judicial review was not available in the enforcement proceeding, and that it was entitled as a matter of law to collect the unpaid penalty, there being no genuine issue of fact that it had been assessed and was unpaid.

On December 22, 1978, the district court granted the Government's motion for summary judgment. It held that under the judicial review provision of the 1976

Amendments "the Court of Appeals is the exclusive forum for judicial review of a civil assessment," that those provisions applied to pending cases, and that the district court therefore had no jurisdiction to review the validity of the order assessing the civil penalty. Following reaffirmation of this ruling upon reconsideration by the district court, Holcomb took this appeal.

## II

The Horse Protection Act, 15 U.S.C. § 1821 *et seq.*, was passed to prevent cruel and inhumane treatment of horses used for exhibition, and prohibits the practice of "soring," which is the use of chemical or mechanical means or devices on the feet of Tennessee Walking Horses in order to induce an unnatural gait. Under the 1970 Act, a person violating the provisions of the Act was liable for a civil penalty up to $1,000 after notice and opportunity for a hearing. 15 U.S.C. § 1825(a) (1970). If the individual failed to pay the penalty assessed under a final order, the Secretary of Agriculture was authorized to request the Attorney General to institute a civil action in the district court to collect the penalty. Section 1825(a) of the 1970 Act provided

that the district court "shall have jurisdiction to hear and decide any such action."[1]

The 1976 Amendments increased civil penalties to a maximum of $2,000, and added specific provisions for judicial review. Any person found guilty of a violation of the Act and assessed a civil penalty may obtain judicial review of the decision of the Secretary in the U. S. Court of Appeals for the circuit in which he resides or conducts his business, or in the District of Columbia, by filing a notice of appeal within thirty days from the date of the agency order. The court of appeals is authorized to set aside any of the Secretary's findings that are found to be unsupported by substantial evidence. The amendment to § 1825 also provides that if a person fails to pay a penalty after the order imposing it is sustained on appeal or after an unappealed order becomes final, the Secretary is required to refer the matter to the Attorney General who is instructed to file suit in the district court to recover the unpaid penalty. The district court in such an action is not allowed to consider the validity and appropriateness of the final order imposing the civil penalty. *See* 15 U.S.C. § 1825(b) (1976).[2]

1. Section 1825(a) of the 1970 Act read in pertinent part:

Any person who violates any provision of this chapter or any regulation issued thereunder ... shall be assessed a civil penalty by the Secretary of not more than $1,000 for each such violation. No penalty shall be assessed unless such person is given notice and opportunity for a hearing with respect to such violation.... Upon any failure to pay the penalty assessed under this subsection, the Secretary shall request the Attorney General to institute a civil action in a district court of the United States for any district in which such person is found or resides or transacts business to collect the penalty and such court shall have jurisdiction to hear and decide any such action.

2. Section 1825(b) reads in pertinent part:

(b)(1) Any person who violates section 1824 of this title shall be liable to the United States for a civil penalty of not more than $2,000 for each violation. No penalty shall be assessed unless such person is given notice and opportunity for a hearing before the Secretary with respect to such violation....

(2) Any person against whom a violation is found and a civil penalty assessed under paragraph (1) of this subsection may obtain review in the court of appeals of the United States for the circuit in which such person resides or has his place of business or in the United States Court of Appeals for the District of Columbia Circuit by filing a notice of appeal in such court within 30 days from the date of such order .... The findings of the Secretary shall be set aside if found to be unsupported by substantial evidence.

(3) If any person fails to pay an assessment of a civil penalty after it has become a final and unappealable order, or after the appropriate court of appeals has entered final judgment in favor of the Secretary, the Secretary shall refer the matter to the Attorney General, who shall recover the amount assessed in any appropriate district court of the United States. In such action, the validity and appropriateness of the final order imposing the civil penalty shall not be subject to review.

. . . .

■ As a general rule, a court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). We have, of course followed this general rule, applying to pending cases procedural changes that do not affect substantive or vested rights. *Koger v. Ball*, 497 F.2d 702 (4th Cir. 1974). Holcomb argues here that his case falls outside this rule, that the 1976 Amendments affected his substantive rights under the 1970 Act and should therefore not apply in his case. He makes two arguments attempting to show that, as sought to be applied to him, the changes were substantive.[3]

He first contends that the 1976 Amendments amounted to a complete rewrite of the 1970 Act, making a number of material substantive changes. Coupled with the general principle that retroactive operation of legislative enactments is not favored and will not be applied by courts in the absence of a clearly expressed legislative intention of retroactivity, he argues that the 1976 Amendments should not apply to his case. To this the Government counters that as applied to Holcomb's case the changes in question were merely jurisdictional changes of the forum for review, and that such changes are, for the purpose at hand, properly treated as procedural, hence applicable to pending cases.

■ We agree with the Government's position on this point. In the first place, though Holcomb invites scrutiny of the whole of the 1976 Amendments to determine their substantive nature, we need look for this purpose only to those provisions directly affecting his case as then pending. *See Koger v. Ball*, 497 F.2d 702; *Sperling v. United States*, 515 F.2d 465 (3d Cir. 1975). These are the provisions for judicial review alone, since the substantive offense charged to Holcomb under the 1970 Act was unchanged in the 1976 Amendments in any way affecting his substantive rights as they existed under the 1970 Act. *Compare* 15 U.S.C. § 1824(2) (1976) *with* 15 U.S.C. § 1823(b) (1970). The judicial review provision of the 1976 Amendments are for this purpose rightly considered procedural, hence applicable to Holcomb's pending case, because they "simply change[d] the tribunal that is to hear the case." *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916), *quoted in Koger v. Ball*, 497 F.2d at 706; *see also Federal Reserve Bank of Richmond v. Kalin*, 77 F.2d 50 (4th Cir. 1935).

Holcomb next contends, however, that the 1976 review provisions go beyond merely changing the forum to changing the standard of review in a way that adversely affected his substantive rights and that on this alternative basis they should not be made applicable to his pending case. The premise of this contention is that under the 1970 Act he was entitled to *de novo* review

---

**3.** Holcomb also argues that by its very language, the 1976 Amendments could not apply to this case. This argument is without merit. Holcomb was charged with violating 15 U.S.C. § 1823(b) of the 1970 Act, and was assessed a fine under that section. He argues that the new judicial review provision of the 1976 Amendments refers to review of civil penalties assessed for violations of § 1824. Because he was assessed a penalty for violation of § 1823, this section in the new Act, § 1825(b)(2), could not possibly apply to him. He was, therefore, left only with the provision for review in the 1970 Act.

The argument fails because although the 1976 Amendments increased the specific acts for which violations could be found, the conduct for which a civil penalty was assessed against Holcomb—the showing and exhibiting of a sored horse—was still the main activity prohibited by Congress in § 1824 of the 1976 Amendments. All that was changed was the numerical designation of the statutory section where the prohibition was set out. There was no substantive change in the violation for which he was found liable. The judicial review provision, while specifically mentioning § 1824, obviously intends that judicial review apply to orders finding that unlawful acts had been committed. Section 1824 under the 1976 Amendments is designated "unlawful acts," as is § 1823 under the 1970 Act.

of the agency determination of violation.[4] If this be so, his argument runs, the change in the 1976 Amendments to a substantial evidence standard—in whatever forum—involves unfavorable substantive, rather than merely procedural, change.

Without addressing the general question whether, for retroactivity purposes, such a change in standard of review might affect substantive rather than merely procedural rights, we disagree with the premise, and hence with the ultimate contention. Holcomb's premise of *de novo* review under the 1970 Act is derived from the language of § 1825 of that Act which provided that in an enforcement action in district court to collect an unpaid penalty "such court shall have jurisdiction to hear and decide any such action." From this language Holcomb contends that his only available means—or perhaps an optional means—for securing judicial review of the agency determination under the 1970 Act was to await an enforcement action under § 1825. In such a setting, his contention goes, he was entitled to judicial review of the agency determination by challenging it as a defense to the action to collect the assessed penalty. The "hear and decide" language of § 1825, he says, implies that his challenge would involve *de novo* determination of the charged

violation. As indicated, we do not accept this premise.

It is not clear what means of judicial review of agency determinations was available under the 1970 Act. There was no internal review provision, but it is probable that review could have been had by a plenary civil action brought for the purpose in the district court under 28 U.S.C. § 1337. *See Note, Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals*, 88 Harv.L.Rev. 980, 981 & n.13 (1975). Whether review through proceedings initiated by Holcomb was available under that or other jurisdictional grants to district courts,[5] we can accept for purposes of this appeal that review might also have been had by way of defense to a § 1825 enforcement action in district court. *See* K. Davis, *Administrative Law Treatise* § 23.07 (1958). Accepting this possibility *arguendo*, we conclude that review in the enforcement action would not in any event have been *de novo*, but substantial evidence review on the administrative record, precisely the standard provided by the 1976 Amendments for review in the courts of appeals.

Neither the statutory language of § 1825 nor its legislative history, *see* [1970] U.S.Code Cong. & Ad.News 4870, support the *de novo* review contention. The statute did not expressly[6] provide for *de novo* re-

---

**4.** In the district court Holcomb's attempted defense to the enforcement action by means of judicial review of the agency decision broadly invoked the scope of review provisions of the Administrative Procedure Act, 5 U.S.C. § 706. *App.* at 39. Among various specific challenges drawn from those provisions was an assertion that the agency's action was "unsupported by substantial evidence," *see* 5 U.S.C. § 706(2)(E). To the extent he then sought alternatively a right to *de novo* review of the action, *see* 5 U.S.C. § 706(2)(F), there was no suggestion of the form it should take, *i. e.*, whether it should be confined to *de novo* review of the administrative record or might involve taking additional evidence.

**5.** Theoretically at least, review might also have been had in appropriate proceedings brought by Holcomb in the district court either under the provisions of § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, or under the general federal question grant in 28 U.S.C. § 1331.

Although *Califano v. Sanders*, 430 U.S. 99, 104–07, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977) has since scotched the assumption, under the view then prevailing in this circuit, jurisdiction would at that time have been assumed as of course under § 10 of the Administrative Procedure Act. *See, e. g., Deering Milliken, Inc. v. Johnston*, 295 F.2d 856 (4th Cir. 1961).

The longstanding jurisdictional amount limitation in § 1331—which while in effect would presumably have prevented its invocation by Holcomb—was removed as to actions of this type by the amendments of October 21, 1976. Administrative Procedure Act Amendments of 1976, Pub.L. No. 94–574, § 703, 90 Stat. 2721.

**6.** Holcomb apparently contends that this meaning is implicit in the "hear and decide" language of the statute. We are not persuaded that Congress thereby intended to provide in the first place for any form of defensive judicial review in the enforcement proceeding, and beyond that, to provide for review *de novo*. Ap-

view—assuming it contemplated any defensive judicial review—though the device is well known to Congress. *See, e. g.*, 18 U.S.C. § 43(c)(1) (*de novo* review in action to collect civil penalty). Where the standard is not specified, as it was not in § 1825, the Supreme Court has admonished that judicial review should ordinarily be confined to the administrative record and should not be *de novo*. *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963). In such a situation, *de novo* review is appropriate only in special circumstances where agency factfinding procedures are inadequate in an adjudicatory proceeding, or where issues not before an agency are raised in a proceeding to enforce nonadjudicatory agency action. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Neither of these special circumstances existed in Holcomb's case. The administrative proceeding here was adjudicatory. Though Holcomb sought on a variety of grounds to challenge in the enforcement action its ultimate result, there is no suggestion that the factfinding procedures employed—though they may have led to legally erroneous findings—were so intrinsically inadequate in the *Overton Park* sense that *de novo* judicial review was warranted to correct them.

In the usual circumstances, such as that presented here, the standard of judicial review most consistent with the division of labors envisioned by the administrative system is the traditional substantial evidence test, *see Doraiswamy v. Secretary of Labor*, 555 F.2d 832, 839–40 (D.C.Cir.1976), and we are satisfied that this is the standard that would have governed review if any had been available, as Holcomb contends it was, in an enforcement action under the 1970 Act. There was thus no change—either substantive or procedural in nature—in the

standard of review expressly provided by the 1976 Amendments from any available to him under the 1970 Act or otherwise.

### III

For these reasons, the district court rightly concluded that the 1976 Amendments controlled Holcomb's right to have judicial review of the agency determination. Because they confer exclusive jurisdiction for that purpose upon the court of appeals, the district court rightly declined to entertain Holcomb's attempted defense by this means in the Government's enforcement action. Since Holcomb did not otherwise refute the Government's entitlement to collection of the assessed and unpaid civil penalty, the district court rightly entered summary judgment for the Government on its claim.

*AFFIRMED.*

---

pearing as does the phrase in a clause whose basic thrust is simply to confer jurisdiction in district courts to entertain the enforcement action, we think it simply completes that basic thought with a rather traditional form of words describing, generally, the exercise of judicial

jurisdiction. The phrase is perfectly consistent with the most obvious intention of the clause in which it appears: to confer jurisdiction to hear and decide any disputed issues related to whether the penalty was indeed assessed and remains unpaid.