**Peggy ROBINSON, Plaintiff,**

v.

**DAVIS MEMORIAL GOODWILL INDUSTRIES, et al., Defendants.**

**Civ. A. No. 91–1085.**

United States District Court, District of Columbia.

April 21, 1992.

Morgan J. Hallman, Chevy Chase, Md., for plaintiff.

Arthur P. Rogers, Melanie E. Fields, Whiteford, Taylor & Preston, Washington, D.C., for defendants.

**MEMORANDUM OPINION AND ORDER**

SPORKIN, District Judge.

This case comes before the Court on the Plaintiff's Motion for Leave to Amend portions of the complaint. *See* Fed.R.Civ.P. 15(a).[1] Because this Court finds that the compensatory damage and jury trial provisions of the Civil Rights Act of 1991 apply retroactively to this case, the Court grants Plaintiff leave to amend the complaint to include such demands.

---

1. Defendants have also filed a Motion to Dismiss certain portions of Plaintiff's complaint. That motion is addressed in a separate opinion.

## BACKGROUND

Plaintiff is a former employee of Defendant Davis Memorial Goodwill ("Goodwill"). On May 13, 1991 she filed this action in federal court against Goodwill and several officers and supervisors at Goodwill. Plaintiff's complaint alleges that the Defendants intentionally discriminated against her because of her race and gender during her employment at Goodwill. She claims that she was eventually terminated on that basis in violation of federal law. *See* 42 U.S.C. 2000e *et seq.*

In her complaint Plaintiff requested that the Court award Plaintiff backpay and reinstate her to her former position, the remedies then permitted under Title VII. Subsequently, on November 21, 1991 the President signed into law the Civil Rights Act of 1991 (the "Act"). The Act as amended permits a jury trial and compensatory and punitive damages in Title VII suits. Plaintiff has now moved that this Court permit her to amend the complaint to include demands for a jury trial and for compensatory damages.[2]

## DISCUSSION

■ Section 402 of the Civil Rights Act of 1991 provides as follows:

Sec. 402. Effective Date

(a) In General—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

There are two specific exceptions to this provision, providing that certain provisions apply only prospectively. First, in Section 109, protecting extraterritorial employment, subsection c provides that, "The amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act." Second, Section 402(b) provides:

(b) Certain Disparate Impact Cases.— Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

Besides these two specific exceptions, neither of which is at issue in this case, Section 402(a) governs the effective date of the Act.

The specific issue before this Court is whether Section 102 of the Civil Rights Act of 1991 applies to a case pending at the time of its enactment. That section designates the remedies available in intentional discrimination cases and governs when such cases may be tried before a jury and when a judge must hear a case. In relevant part it provides:

Sec. 102. Damages in Cases of Intentional Discrimination.

(a) Right of Recovery—

(1) Civil Rights.—In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in intentional discrimination ... the complaining party may recover compensatory and punitive damages as allowed in subsection (b) in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

[Section 102(b) provides for compensatory and punitive damages up to certain caps in such actions but exempts from its scope punitive damages against the government.]

(c) Jury Trial—If a complaining party seeks compensatory or punitive damages under this section—

(1) any party may demand a trial by jury ...

These provisions, unlike certain other portions of the Act, do not affect the determination of liability in employment discrimination cases. They alter the remedies available once intentional discrimination is proven and provide a jury trial in cases where money damages are at issue. Both the plain language of the statute and the

---

**2.** Under Rule 15(a), a motion for leave to amend a pleading is to be granted "freely ... when justice so requires." Fed.R.Civ.P. 15(a). Because this Court finds that an act of Congress has altered the procedures and remedies available in a pending case, justice requires that the Plaintiff be permitted to amend the complaint to comply with the law,

presumptions to be applied to enactments regarding court procedure and available remedies dictate that Section 102 be applied retroactively to this case.

### A. The Plain Language of the Statute

█ In determining whether Section 102 of the Act is applicable to a case pending at the time of its enactment, the plain language of the statute is the focal point. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). Although Section 102 by itself does not provide any indication as to whether it is to be applied retroactively, "statutory meaning is of course to be derived, not from the reading of a single sentence or section, but from consideration of an entire enactment against the backdrop of its policies and objectives." *Don't Tear it Down v. Pennsylvania Ave. Dev. Corp.*, 642 F.2d 527, 533 (D.C.Cir.1980); *United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984) ("we do not, however, construe statutory phrases in isolation; we read statutes as a whole.") Reading the Act as a whole, there is considerable support for the application of Section 102 to pending cases.

The Act's most general timing provision requires that, with exceptions, the Act "shall take effect upon enactment." Sec. 402(a). "While not dispositive on the issue [of retroactivity] the fact that Congress expressed its intention that the statute take effect upon enactment is some indication that it believed that application of its provisions was urgent." *In the Matter of Reynolds*, 726 F.2d 1420 (9th Cir.1984). In *Reynolds* the Court retroactively applied amendments to the Bankruptcy Code based on language in a Conference Report similar to the language in Section 402(a). In this case, unlike *Reynolds*, Congress placed its direction that the Act "take effect upon enactment" in the statute itself. Therefore, even more so than in *Reynolds*, it would be impossible to construe "this expression of congressional concern as a direction that the law should *not* be applied to pending matters." *Id.* Moreover, it has specifically been recognized that the term

"taking effect," as compared to "having effect," is a strong indication that a statute is to be applied retroactively. *Kaiser Aluminum*, 110 S.Ct. at 1590 (White, J. dissenting with Brennan, J., Marshall, J. and Blackmun, J.). *Compare ALPO Petfoods v. Ralston Purina*, 913 F.2d 958, 963 n. 6 (D.C.Cir.1990) ("becoming effective").

Section 402(a)'s meaning becomes even more clear when it is read in conjunction with Sections 109(c) and 402(b). Those sections carve out certain substantive provisions of the Act and provide that they are only to be applied prospectively. Were the entire Act to be prospective only in nature, these "otherwise specifically provided" exceptions to 402(a) would be superfluous. They would add nothing to the Act because every provision "would not apply with respect to conduct occurring before the date of enactment." Sec. 109(c). *See, Yakima Valley Cablevision, Inc. v. F.C.C.*, 794 F.2d 737, 747 (D.C.Cir.1986) (finding that because a particular section in act provided for its own retroactive application, the rest of act was prospective). Such a reading, therefore, must be avoided.

"The cardinal principle of statutory construction is to save and not to destroy. It is [a court's] duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section ..." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (citations omitted); *Mackey v. Lanier Collection Agency & Service*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."). Applying all other sections of the Act prospectively would render sections 109(c) and 402(b) a nullity. Basic canons of statutory construction mandate retroactive application of a section unless that section of the Act says, as do Sections 109(c) and 402(b), it is to be applied prospectively. Therefore, Section 102, which has no "exception" mandating it only be applied prospectively, must be applied to pending cases.

▮ Read in isolation Section 402(a) could also be interpreted merely as providing that there was to be no "grace period" for compliance with the Act. *See Fray v. Omaha World Herald Company*, 960 F.2d 1370, (8th Cir.1992). Read this way, section 402(a) has nothing at all to do with retroactivity. That reading, however, becomes nonsensical upon reading the Act as a whole and considering the two exceptions to Section 402(a) in the statute. Had Congress meant section 402(a) merely to indicate that, with exceptions, there was to be no grace period, then the exceptions to 402(a) would have provided applicable grace periods. They do not. In fact, neither these exceptions nor any other provision of the Act has anything to do with "grace periods." Instead the two exceptions specifically address the issue of retroactivity. Why would the two exceptions to a provision regarding "grace periods" address the issue of retroactivity? The answer is simply that the provision does not have to do with "grace periods," it concerns the retroactivity of the Act. Read as a whole, then, the plain language of the Act indicates that Section 102 ought to be applied to cases pending at the time the statute became law.[3]

*B. Judicial Interpretation Concerning Retroactivity*

In addition to the plain language of the Act, the case law supports retroactive application of Section 102 of the Act. The analysis of the applicable decisions is complicated because the Supreme Court has articulated two different rules regarding a court's decision to apply statutes to cases pending at the time of enactment. In *Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Court applied "the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." In contrast, in *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), the Court stated that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Furthermore in a recent case the Court confirmed the viability of both lines of precedent. *See Kaiser Aluminum*, 110 S.Ct. at 1577. In *Kaiser*, despite the explicit invitation of one Justice, the Court explicitly refused to discard either of the two rules.

Where the Supreme Court has explicitly acknowledged two different presumptions regarding a statute's retroactivity, it is not the role of an inferior court to "pick one" as the "better rule." *See Fray v. Omaha World Herald Company*, 960 F.2d 1370, 1380-81 (8th Cir.1992) (Heaney, J. dissenting). Rather, the more restrained and logical course is to surmise that one presumption is applicable to certain statutory changes and the second is applicable to others. Indeed, the Supreme Court itself

---

3. This Court finds it both unhelpful and unnecessary to consult the legislative history of the Act. In doing so, this Court adopts:

"[T]he familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."

*Consumer Product Safety Com'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). *See also Independent Insurance Agents of America, Inc. v. Clarke*, 955 F.2d 731 (D.C.Cir.1992) (Buckley, J.) (holding that punctuation in statute indicated that it had been repealed by Congress seventy years earlier). Despite the wide differences among decisions addressing the Act's retroactivity, nearly every court that has ruled on the issue has agreed that the legislative history is not "clearly" in favor of either prospective or retroactive application. *See e.g. Vogel v. Cincinnati*, 959 F.2d 594 (6th Cir.1991) ("Legislative history does not provide any guidance on this issue"); *Van Meter v. Barr*, 778 F.Supp. 83, 84 (D.D.C.1991) (legislative history "leaves issue in a state of total confusion"); *Mojica v. Gannett Co., Inc.*, 779 F.Supp. 94, 96 (N.D.Ill.1991) ("The parties agree that the legislative debates are inconclusive"); *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1304 (N.D.Cal.1992) ("the statements and interpretive memoranda of different members of the House and Senate conflict on the question of retroactivity"). Given the unclear legislative history, this Court believes it is clear that the analysis of Congressional intent must concentrate in the plain language of the statute. That language favors retroactivity.

has given indications that retroactivity is preferred in some cases more than others. "Our readiness to apply new statutes to pending cases has arguably been at its peak when the statutes involved the administration or jurisdiction of the federal courts." *Kaiser,* 110 S.Ct. at 1593 (White, J. dissenting).[4] That statement merely recognizes the more general principle stated by Justice Story, that it is unjust when a law "takes away or impairs vested rights acquired under existing law ... in respect to transactions or considerations already past." Elmer E. Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence, 20 Minn.L.Rev. 775, 785 (1936) (cited in *Kaiser Aluminum,* 110 S.Ct. at 1579 (Scalia, J. concurring)).

■ What is at work, then, is a principle of basic fairness. A person ought not to be held liable for conduct which, at the time of its occurrence, was lawful and which the person had a justified expectation would remain so. This Court reads *Bradley* and *Bowen* to dictate that a presumption of retroactivity is only applicable when a statute does not operate to deprive a party of a vested or matured right. Because Section 102 does not affect any substantive rights of the Defendants, this Court applies the *Bradley* presumption and finds that even aside from the plain language of the Act, it applies to cases pending at the time of enactment.

4. In *Kaiser,* the majority found that the plain language of the statute demanded prospective application and therefore, unlike the dissent, did not need to apply a presumption either for or against retroactivity. 110 S.Ct. at 1577.

5. The limited application of the presumption of retroactivity to cases which do not affect substantive liability is not inconsistent with the decisions of the two Circuits which have passed on other portions of this Act's application to pending cases. In *Vogel v. Cincinnati,* 959 F.2d 594 (6th Cir.1992), the court declined to retroactively apply Section 101(2)(b) of the Act, which amended 42 U.S.C. § 1981 to overrule the Supreme Court's decision in *Patterson v. McClean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Unlike Section 102, the provision addressed in *Vogel* altered the rules of

The facts in *Bradley* and *Bowen* support applying the presumption of retroactivity to Section 102 of the Civil Rights Act of 1991. In *Bradley* the Court faced the decision as to whether to apply a provision allowing recovery of attorneys' fees in a school desegregation litigation to a case where the legal fees had been incurred prior to the enactment of the statute. The Court did apply that statute retroactively but noted that it would not apply a statute retroactively if it would result in "manifest injustice" by working to "deprive a person of a right that had matured or become unconditional," i.e. a vested right. 416 U.S. at 720, 94 S.Ct. at 2020. In contrast, the *Bowen* Court refused to retroactively apply Department of Health and Human Service's cost recoupment rules. Those rules would have required private parties to return to the government reimbursements issued years before under the old rules. Without citing *Bradley,* the Court stated that it was applying a presumption against the retroactive application of the new agency rules. *See Bowen,* 488 U.S. at 208, 109 S.Ct. at 471. Unlike *Bradley,* however, the Court in *Bowen* was faced with a situation where retroactive application of a new substantive rule would force a private party to return funds to which it had a vested right under the old rule.[5]

*Bradley* dictates that Courts look at the following three factors to determine whether a statute is presumed to apply to cases pending at the time of its enactment: 1) the

substantive liability. Citing both *Bowen* and *Bradley,* the court explicitly found:

> *Bradley* should be read narrowly and should not be applied in contexts where 'substantive rights and liabilities', broadly construed, would be affected. Clearly retroactive application of the 1991 Act would affect 'substantive rights and liabilities' of the parties to this action.

960 F.2d at 1373-74 (citations omitted). In *Fray v. The Omaha World Herald Company,* 960 F.2d 1370 (8th Cir.1992), the court also addressed a case brought under Section 101(2)(b), and refused to apply it retroactively. The Court found that the new statute would make the difference as to whether there was liability for the defendant's conduct. *See also* 960 F.2d at 1379 (Heaney, J. dissenting) (explicitly stating the distinction between statutes that deprive individuals of vested rights and those that do not).

nature and identity of the parties; 2) the nature of their rights; 3) the nature of the impact of the change of the law upon those rights. *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019. Applying those factors to the procedural and remedial changes made by Section 102, it is clear that this Court must presume that Section 102 applies to pending cases.

### 1. Nature and Identity of the Parties

In considering the nature and identities of the parties a court must ascertain both whether the government is a party to the action and whether the litigation is brought to vindicate an important public interest. This case concerns a dispute between private parties, an employee and her former employer and supervisors. As the court in *Stender* noted, however, "it also involves matters of great public concern—remedying race and sex discrimination and promoting equality. Thus, this first factor weighs in favor of the retroactive application of the 1991 Civil Rights Act." 780 F.Supp. at 1307. *See also, Bradley*, 416 U.S. at 718, 94 S.Ct. at 2019 (in "school desegregation litigation" context "it is not appropriate to view the parties as engaged in a routine private lawsuit."); *Mojica*, 779 F.Supp. at 98 (private suits involving the Act "involve matters of substantial public concern."); *Fray*, at 1381-82 ("this case involves civil rights, undisputedly a 'great national concern' that merits a presumption of retroactivity.") (Heaney, J. dissenting). This Court agrees that when a private plaintiff brings a suit designed to rid the job market of intentional race and gender discrimination, the public at large is benefited.

Furthermore, in cases between private parties, the considerations implicated when a court construes a waiver of sovereign immunity, are not present. Those considerations guided the court in *Van Meter v.*

*Barr* and distinguish that case from the case before this court. *See* 778 F.Supp. 83 at 85–86. Thus, the presumption of retroactivity is merited according to this first factor.

### 2. Nature of the Rights Involved

■ A court must also consider the nature of the rights involved to determine whether retroactive application would operate to deprive a party of a matured, unconditional right. *See Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. Section 102 changes two aspects of intentional discrimination suits. It adds the remedy of compensatory damages in intentional discrimination suits and provides for a jury trial in cases where such damages are requested. These changes, while important, do not deprive the Defendants of the type of vested rights recognized in previous cases.

Courts have recognized that the presumption of retroactivity applies in the case of "a procedural statute that affects the *remedies* available to ... employees suffering from employment discrimination." *Womack v. Lynn*, 504 F.2d 267, 269 (D.C.Cir.1974) (emphasis in original). *See also Koger v. Ball*, 497 F.2d 702 (4th Cir. 1974) (*reasoning adopted* by D.C. Circuit in *Womack*) ("Procedural statutes that affect remedies are generally applicable to cases pending at the time of enactment."); *Lussier v. Dugger*, 904 F.2d 661, 665 (11th Cir.1990) (retroactively applying Civil Rights Restoration Act noting that " 'statutory changes that are procedural or remedial in nature apply retroactively.' "); *In re Resolution Trust Corporation and Ward v. Resolution Trust Corporation*, 888 F.2d 57, 58 (8th Cir.1989) ("If a case is still pending when the new statute is passed, new procedural or jurisdictional rules will usually be applied to it.").[6] The Defen-

---

**6.** Only one decision in this Circuit, *Matter of District of Columbia Workmen's Comp. Act*, 554 F.2d 1075, 1080 (D.C.Cir.1976), is potentially at odds with applying the presumption of retroactivity when procedural, not substantive, changes are involved. In that case, the Court of Appeals kept jurisdiction over an appeal from a district court, even after a new statute had been passed which provided that the appeals would come directly from an administrative board. Con-

gress changed the review procedure in order to save the litigants and the court system time and money.

That case differs from the one before this Court. In *Workmen's Comp.* retroactive application of the new procedure would have prejudiced *both* parties and thwarted the Congressional intent of the *new* statute. Both sides would have been forced to relitigate an issue before an administrative tribunal that they had

dants in this case do not have a matured right to either the Plaintiff's limitation to certain remedies or in a bench trial.

Admittedly Section 102(a)'s addition of compensatory damages is important. That does not alter the fact, however, that "where Congress fails to make its intention absolutely clear, courts are much more inclined to apply retroactively amendments directed at the *remedy* rather than changes in the *substantive rights*." *Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 93 (D.C.Cir.1980) (emphasis in original). *See also Yakima Valley Cablevision, Inc. v. F.C.C.*, 794 F.2d 737, 748 (D.C.Cir.1986) ("this circuit views statutes that change substantive *rights* as differing from those—as *Bradley*—that merely change substantive *remedies*.") (emphasis in original); *Eikenberry v. Callahan*, 653 F.2d 632, 635 n. 14 (D.C.Cir.1981). In *Hastings* the court retroactively applied amendments which lifted certain damage caps in workman's compensation cases. Like the limitation to equitable relief in discrimination cases (which does include backpay), the damage cap was undoubtedly an important provision to employers. The court explained, however, that it was not the *importance* of the right that was pertinent. Rather, the presumption of retroactivity should apply when statutes affect the remedies available because "modification of remedy merely adjusts the extent, or method of enforcement, of liability in instances in which the possibility of liability was known." *Id.* at 93. Thus, the provision of compensatory damages in Section 102 does not affect a vested right of an employer. It concerns only the enforcement of the longstanding prohibition against intentional discrimination.

This argument applies with equal force to Section 102(c)'s provision of a jury trial. I begin by noting that the provision of a jury trial in the Act is incidental to and dependent on a claim of compensatory damages. It would make little sense to retroactively apply the right to compensatory damages without the concomitant jury trial option. More importantly, Defendants have no vested right in the internal processes of the court. They have no vested right to try their case to a judge any more than they have a right to the continued application of a local rule governing the number of peremptory challenges they are accorded, the length of their briefs, or the time limits for response to an opposing party's motion. Unlike the right to a jury trial, which is often guaranteed by the constitution, "the parties do not have a substantial right to a bench trial." *Mojica*, 779 F.Supp. at 98. Thus, the procedural changes occasioned by Section 102 affect the types of remedies and procedures which result in a presumption of retroactivity under *Bradley*'s second factor.[7]

already litigated before the district court. The court noted that this "would obviously involve a great waste of time, energy, and money." *Id.* Unlike this case, retroactive application of the new procedure in *Workmen's Comp.* would have run *directly contrary* to the intent of Congress, which was to shorten the administrative process, and would have prejudiced both parties. That is, perhaps, why neither party raised the issue before the appellate court. *Id.* at 1078. Under those circumstances, the presumption against retroactivity was appropriate.

7. The importance of the distinction between statutes affecting substantive liability of the parties and those affecting procedure is also supported by this Circuit's cases choosing *not* to apply a statute retroactively. In *Ralis v. RFE/ RL*, 770 F.2d 1121, 1127 (D.C.Cir.1985), Judge Starr, relying on *Bradley*, refused to retroactively apply amendments to the Age Discrimination in Employment Act which broadened the ADEA's scope to include employment in foreign countries. In finding that such application would constitute "manifest injustice" the court found "especial relevance" in the fact that in *Bradley* "there was no change in the substantive obligation of the parties." *Id.* at 1129. Finding that the case before it was one in which the law altered the substantive code of conduct, the court found it "quite incompatible with … fundamental notions of law that an act lawful at the time it was done can, at the stroke of a legislative pen, be rendered unlawful." *Id.* Thus the court applied the same notions of fairness which weigh in favor of retroactive application of Section 102.

More recently, in *ALPO Petfoods v. Ralston*, 913 F.2d 958, 963 n. 6 (D.C.Cir.1990), the court applied the presumption against the retroactivity of a substantive amendment to the Lanham Act which, "sharpen[ed] the section's focus on false and deceptive advertising." *Id.* While these cases might be applicable to other provisions of the Civil Rights Act, which establish new liability, they are not analogous to Section

### 3. Impact of the Change in Law Upon the Rights of Defendant

Finally, this Court considers whether retroactive application of Section 102 would impose new and unanticipated obligations without notice or an opportunity to be heard. *See Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. Merely taking as true the allegations in Plaintiff's complaint make it clear that this factor weighs in favor of retroactive application. Plaintiff has alleged that the Defendants intentionally discriminated against her on the basis of her race and gender.

Such conduct is illegal now, it was illegal before the Act, and has been illegal since Title VII became law in 1964. Like the school board's "constitutional responsibility for providing pupils with a nondiscriminatory education" in *Bradley*, Section 102 occasioned "no change in the substantive obligation" of the Defendants in this case to provide a work place free of intentional racial and gender discrimination. 416 U.S. at 721, 94 S.Ct. at 2021. Even before the Act, Courts possessed the power to reinstate victims to their former positions and award backpay. Until Section 102 became law, however, those who engaged in these illegal acts and caused lasting injuries to their victims were not required to bear the full cost of their wrongdoing. "Removing the artificial ceiling, therefore, creates no injustice. It instead removes an obstacle to fair treatment ..." *Hastings*, 628 F.2d at 94.

It is no answer for an employer to claim that had Section 102 been enacted before the conduct occurred, he would have weighed the consequences of his discriminatory conduct more carefully. What is alleged in this case is not negligence, but *intentional* discrimination. The law has never countenanced that an employer may weigh the legal consequences of his discrimination and choose to continue his unlawful conduct. An employer cannot pay for the right to discriminate because no such "right" has ever existed. The law absolutely prohibits intentional discrimination. That much is made clear because the law has always permitted a Court to impose unconditional injunctive relief. Since the Defendants have never been entitled under any circumstances, to intentionally discriminate on the basis of race or gender, the final *Bradley* factor favors a presumption of retroactively applying Section 102.

## CONCLUSION

The plain language of the Act supports the application of Section 102 to cases pending at the time of its enactment. In addition, the cases of the Supreme Court and this Circuit support the presumption of retroactivity where a statute does not affect the matured, unconditional rights of the parties. Section 102 of the Act does not affect such rights because it only provides new remedies and the option of a jury trial. These provisions only concern the enforcement of conduct that was unlawful before the Act was passed.

Given this presumption and the statute's plain language, Section 102 is applicable to this case, which was pending when the President signed the Civil Rights Act of 1991 into law. Therefore, the Plaintiff's Motion for Leave to Amend the Complaint to include a claim for compensatory damages and a jury trial demand is granted. Plaintiff is directed to file such a complaint in compliance with the local rules.

A separate order accompanies this opinion.

## ORDER

Upon consideration of the entire record in the above-captioned matter, the Plaintiff's Motion for Leave to Amend the Complaint, and the Defendants' Opposition thereto it is this 21 day of April, 1992 hereby

ORDERED that the Plaintiff's Motion for Leave to Amend the Complaint is GRANTED and it is

FURTHER ORDERED that Plaintiff will be allowed ten (10) days to amend her complaint in compliance with all local rules.

102, which deals only with the procedures and remedies available.