**Linda L. JAEKEL and Emily Eelkema, Plaintiffs,**

**v.**

**EQUIFAX MARKETING DECISION SYSTEMS, INC., Defendant.**

Civ. No. 92–607–A.

United States District Court, E.D. Virginia, Alexandria Division.

June 26, 1992.

Andrew William Stephenson, Dunnells, Duvall & Porter, Washington, D.C., for plaintiffs.

Elizabeth Land Lewis, McGuire, Woods, Battle & Boothe, McLean, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### INTRODUCTION

Plaintiffs Linda L. Jaekel and Emily Eelkema sued their former employer, Equifax Marketing Decision Systems, Inc., alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17 ("Title VII"). They seek, *inter alia*, compensatory and punitive damages, and they demand a jury trial. These elements of relief and the right to trial by jury are

newly available in Title VII cases pursuant to the Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071 [hereinafter the "1991 Act" or the "Act"].[1] Presented here, on defendant's motion to dismiss, is the question whether § 102 of the 1991 Act applies in cases where, as here, the conduct complained of occurred prior to the Act's November 21, 1991, date of enactment, but the suit was filed afterwards.[2] For the reasons elaborated here, the Court holds that § 102 of the 1991 Act applies to such cases. Accordingly, plaintiffs are entitled to a trial by jury and to seek compensatory and punitive damages.

### ANALYSIS

■ Across the country, federal courts are grappling with the question whether the 1991 Act, in whole or in part, applies retroactively. Thus far, the decisions on this issue are striking in their lack of uniformity. One formidable line of cases holds that the Act operates prospectively only.[3] A second holds that some of its

---

1. Section 102 of the 1991 Act states in pertinent part:
   Sec. 102. Damages in Cases of Intentional Discrimination.
   (a) Right of Recovery—
   (1) Civil Rights—In an action brought by the complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in intentional discrimination ... the complaining party may recover compensatory and punitive damages as allowed in subsection (b) in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent....
   (b) Jury Trial—If a complaining party seeks compensatory or punitive damages under this section—
   (1) any party may demand a trial by jury....

2. Plaintiffs filed their lawsuit on April 30, 1992. The allegedly harassing conduct underlying the complaint occurred prior to October 1991, when Ms. Eelkema resigned from her job with defendant. Ms. Jaekel left her employment in June 1991. Both women claim to have been constructively discharged.

3. *See, e.g., Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992); *Luddington v. Indiana Bell Tele. Co.,* 966 F.2d 225 (7th Cir.1992); *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929 (8th Cir.); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); *Valdez v. Mercy Hosp.,* 961 F.2d 1401 (8th Cir.); *Toney v.*

*State of Alabama,* 784 F.Supp. 1542 (M.D.Ala. 1992); *Maddox v. Norwood Clinic, Inc.,* 783 F.Supp. 582 (N.D.Ala.1992); *Donaldson v. Brady,* 1992 W.L. 119497 (D.Colo.); *Guillory–Wuerz v. Brady,* 785 F.Supp. 889 (D.Colo.1992); *Burchfield v. Derwinski,* 782 F.Supp. 532 (D.Colo. 1992); *Hansel v. Pub. Serv. Co.,* 778 F.Supp. 1126 (D.Colo.1991); *Kemp v. Flygt Corp.,* 791 F.Supp. 48 (D.Conn.1992); *Reynolds v. Frank,* 786 F.Supp. 168 (D.Conn.1992); *Hatcher–Capers v. Haley,* 786 F.Supp. 1054 (D.D.C.1992); *Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991); *Doe v. Board of County Comm'rs,* 783 F.Supp. 1379 (S.D.Fla.1992); *Ribando v. United Airlines, Inc.,* 787 F.Supp. 827 (N.D.Ill.1992); *Sofferin v. American Airlines,* 785 F.Supp. 780 (N.D.Ill. 1992); *Steinle v. Boeing Co.,* 785 F.Supp. 1434 (D.Kan.1992); *West v. Pelican Mgmt. Serv. Corp.,* 782 F.Supp. 1132 (M.D.La.1992); *Conerly v. CVN Companies, Inc.,* 785 F.Supp. 801 (D.Minn.1992); *Cook v. Foster Forbes Glass,* 783 F.Supp. 1217 (E.D.Mo.1992); *High v. Broadway Indus., Inc.,* 1992 WL 33860, 57 Fair Empl.Prac. Cas. (BNA) 1159 (W.D.Mo.1992); *Thompson v. Johnson & Johnson Mgmt. Info. Center,* 783 F.Supp. 893 (D.N.J.1992); *Tyree v. Riley,* 783 F.Supp. 877 (D.N.J.1992); *Thomas v. Frank,* 791 F.Supp. 470 (D.N.J.1992); *Smith v. Petra Cablevision Corp.,* 793 F.Supp. 417 (E.D.N.Y.1992); *McLaughlin v. State of New York,* 784 F.Supp. 961 (S.D.N.Y.1992); *Sorlucco v. New York City Police Dep't,* 780 F.Supp. 202 (S.D.N.Y.1992); *Patterson v. McLean Credit Union,* 784 F.Supp. 268 (M.D.N.C.1992); *Percell v. I.B.M.,* 785

provisions apply retroactively.[4] At least one court, not unreasonably, has thrown up its hands in despair, opting to wait for resolution of the issue of the Act's retroactivity in the higher courts.[5]

Procedurally, this case is distinguishable from the vast majority of these cases, which have arisen in the context of litigation pending on the Act's effective date.[6] Unlike those cases, here plaintiffs' filed their lawsuit after the Act's effective date. Plaintiffs maintain that this distinction is dispositive in light of the plain language of the statute.

■ It is well-settled that the touchstone of statutory interpretation is the plain language of the statute. The plain language of a statute governs its interpretation absent clearly expressed legislative intent to

---

F.Supp. 1229 (E.D.N.C.1992); *Johnson v. Rice,* 1992 W.L. 16284 (S.D.Ohio); *Kimble v. DPCE, Inc.,* 784 F.Supp. 250 (E.D.Pa.1992); *Futch v. Stone,* 782 F.Supp. 284 (M.D.Pa.1992); *Alexandre v. AMP, Inc.,* 1991 WL 322947, 57 Fair Empl. Prac.Cas. (BNA) 768 (W.D.Pa.1991); *Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077 (E.D.Va.1992); *Rowson v. County of Arlington,* 786 F.Supp. 555 (E.D.Va.1992); *McCormick v. Consolidation Coal Co.,* 786 F.Supp. 563 (N.D.W.Va.1992); *Hameister v. Harley–Davidson, Inc.,* 785 F.Supp. 113 (E.D.Wis.1992).

The Equal Employment Opportunity Commission ("EEOC") opposes retroactive operation of the Act. *See* EEOC Policy Guidance of Retroactivity of Civil Rights Act of 1991 (BNA January 2, 1992). But this policy statement, although germane, is not entitled to deference. *See EEOC v. Arabian Am. Oil Co.,* — U.S. ——, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991) (declining to "defer" to the EEOC construction of Title VII); *General Elec. v. Gilbert,* 429 U.S. 125, 140–43, 97 S.Ct. 401, 410–12, 50 L.Ed.2d 343 (1976) ("courts properly may accord less weight to such guidelines than to administrative regulations"); *Croce,* 786 F.Supp. at 1144.

**4.** *See, e.g., Goldsmith v. City of Atmore,* 782 F.Supp. 106 (S.D.Ala.1992); *Watkins v. Bessemer State Technical College,* 782 F.Supp. 581 (N.D.Ala.1992); *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991); *United States v. Dep't of Mental Health,* 785 F.Supp. 846 (E.D.Cal.1992); *Lee v. Sullivan,* 787 F.Supp. 921 (N.D.Cal.1992); *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992); *Great Am. Tool and Mfg. Co. v. Adolph Coors Co., Inc.,* 780 F.Supp. 1354 (D.Colo.1992); *Robinson v. Davis Memorial Goodwill Indus.,* 790 F.Supp. 325 (D.D.C.); *Assily v. Tampa Gen'l Hosp.,* 791 F.Supp. 862 (M.D.Fla.1992); *Desai v. Siemens Medical Sys., Inc.,* 792 F.Supp. 1275 (M.D.Fla. 1992); *Sussman v. Salem, Saxon and Nielsen, P.A.,* 792 F.Supp. 1278 (M.D.Fla.1992); *Joyner v. Monier Roof Tile, Inc.,* 784 F.Supp. 872 (S.D.Fla. 1992); *Long v. Carr,* 784 F.Supp. 887 (N.D.Ga. 1992); *Graham v. Bodine Elec. Co.,* 782 F.Supp. 74 (N.D.Ill.1992); *EEOC v. Elgin Teacher's Ass'n,* 780 F.Supp. 1195 (N.D.Ill.1991); *Mojica v. Gannett Co., Inc.,* 779 F.Supp. 94 (N.D.Ill.1991); *Aldana v. Raphael Contractors, Inc.,* 785 F.Supp. 1328 (N.D.Ind.1992); *Poston v. Reliable Drug Stores, Inc.,* 783 F.Supp. 1166 (S.D.Ind.1992);

*Croce v. V.I.P. Real Estate, Inc.,* 786 F.Supp. 1141 (E.D.N.Y.1992); *Sanders v. Culinary Workers Local No. 226,* 783 F.Supp. 531 (D.Nev.1992); *Andrade v. Crawford & Co.,* 786 F.Supp. 1302 (N.D.Ohio 1992); *Thakkar v. Provident Nat'l Bank,* 1991 WL 274827, 58 Fair Empl.Prac.Cas. (BNA) 1435 (E.D.Pa.1991); *Savko v. Port Authority of Allegheny County,* 800 F.Supp. 268 (W.D.Pa.); *Sample v. Keystone Carbon Co.,* 786 F.Supp. 527 (W.D.Pa.1992); *La Cour v. Harris County,* 1991 WL 321020, 57 Fair Empl.Prac. Cas. (BNA) 622 (S.D.Tex.1991); *Tarver v. Functional Living, Inc.,* 796 F.Supp. 246 (W.D.Tex. 1992); *Saltarikos v. Charter Mfg. Co., Inc.,* 782 F.Supp. 420 (E.D.Wis.1992).

**5.** *See Leach v. Northern Telecom, Inc.,* 790 F.Supp. 572, 573 (E.D.N.C.1992) (declining to rule on the retroactivity issue and instead granting plaintiff's motion to amend her complaint, a solution that "regardless of how the issue is ultimately resolved, will make the most efficient use of judicial time and resources.").

**6.** A handful of cases address the precise issue, directly or in dicta, of the applicability of the Act to pre-Act conduct. *See, e.g., Vogel,* 959 F.2d at 597 (holding, in the context of a pending case, "that the 1991 Act does not govern the instant case which involves conduct that occurred before the 1991 Act became law"); *Fray,* 960 F.2d at 1378 (the Act "should not be retroactively applied to pending cases or other pre-enactment conduct"); *Luddington,* 966 F.2d at 229 ("We hold that the new act is applicable only to conduct engaged in after the effective dates ... in the act, at least if the suit had been brought before the effective date"); *Mozee,* 963 F.2d at 938–39 (declining, with respect to litigation pending on appeal, to apply the Act retroactively to pre-enactment conduct because "it is unfair to make persons accountable for acts that did not violate statutory provisions defining a party's substantive rights when they were performed"). Although different, the result reached here is not inconsistent with the underlying reasoning in these cases that statutes should not apply retroactively to change substantive rights and liabilities. Indeed, the Court here follows this reasoning, but following it, simply finds that § 102 of the Act does not alter substantive, that is, vested rights and liabilities. *See also supra* note 4.

the contrary.[7] *See, e.g., Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("[T]he familiar canon of statutory construction [is] that the starting point for interpreting a statute is the language of the statue itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."); *In re Forfeiture Hearings as to Caplin & Drysdale, Chartered,* 837 F.2d 637 (4th Cir.1988) (same); *Matala v. Consol. Coal Co.,* 647 F.2d 427 (4th Cir.1981) (same); *Salomon Forex, Inc. v. Tauber,* 795 F.Supp. 768, (E.D.Va.1992) (same). Analysis therefore, properly begins with the Act's language.

Section 402 of the 1991 Act states:

Effective Date

(a) In General—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

Since the Act took effect on November 21, 1991, plaintiffs argue, it was in full force and effect in April 1992 when plaintiffs filed their complaint. Thus, plaintiffs contend that there is no genuine issue of retroactivity. *See Great American Tool & Mfg. v. Adolph Coors Co.,* 780 F.Supp. 1354, 1355 (D.Colo.1992) ("Because this case was not pending at the time the Act became law, there is no issue of retroactive application.").

While not without some force, this argument is ultimately unsatisfying. The meaning of the effective date in § 402, without more, is ambiguous. An effective date may mean the date upon which a law's provisions begin to operate. Alternatively, an effective date may mean the date on which a party governed by a new law must begin to conform his conduct to the law's requirements. In some instances, an effective date may serve to establish a "grace period" between the time a law is enacted and the time a party must comply with it. Under one view, § 402's purpose is merely to establish that no grace period exists and not to establish that the Act applies to pre-enactment conduct. *See Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1376 (8th Cir.1992) ("Since many regulatory statutes contain a compliance grace period, a provision clarifying that the Act would be immediately effective is hardly evidence of congressional intent that it be applied retroactively...."). Section 402, by itself, is therefore not dispositive of the retroactivity issue at bar.

■ Plaintiffs make a second statutory argument as well. Even assuming, *arguendo,* that retroactivity is implicated in § 402, plaintiffs point out that two of the Act's provisions are expressly prospective with respect to pre-enactment conduct. *See* § 109(c) of the 1991 Act ("The amendments made by this section [regarding extraterritorial employment] shall not apply with respect to conduct occurring before the date of the enactment of this Act."); § 402(b) of the 1991 Act ("nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30,

---

**7.** It is widely-recognized, at least within the judiciary, that the legislative history of the 1991 Act is a contradictory, ambiguous, unreliable indicator of legislative intent. *See, e.g., Luddington,* 966 F.2d at 227, 1992 W.L. 130393 at *2 ("It seems futile to search for legislative intent.... [a]s so often happens, the [political] contenders could not agree, so they dumped the question into the judiciary's lap without guidance."); *Robinson,* 790 F.Supp. at 328 fn. 3 ("Despite the wide difference among decisions addressing the Acts's retroactivity, nearly every court that has ruled on the issue has agreed that the legislative history is not 'clearly' in favor of either prospective or retroactive application."); *Croce,* 786 F.Supp. at 1150 ("the Court finds that the legislative history reveals divided political posturing so that there is no clear congressional intent as to the effective date of the Act."); *King,* 779 F.Supp. at 157 ("Congress in this new civil rights legislation punted on the question of whether or not the Act applies retroactively. Many senators and congressmen have deliberately tried to create a 'legislative history' to support their personal views on this question, but the fact is that Congress, for no good reason, deliberately chose not to include in the statute itself a provision either for retroactive or for prospective-only application."). *But see Fray,* 960 F.2d at 1378 (reciting the legislative history and reaching the astonishing conclusion that the legislative intent was "surely that the new law be prospective only").

1983."). Plaintiffs argue that these sections would be redundant, and therefore superfluous, if the entire Act were prospective only, a result in conflict with the well-settled principle that wherever possible a statutory provision should be interpreted so as not to render superfluous another portion of the same law.[8] Again, this statutory argument is not without some force. But again, like plaintiffs' first statutory argument, it, too, is ultimately unsatisfying. Simply put, arguments that focus on the statutory language of the 1991 Act sidestep significant concerns underlying the issue of the retroactive application of statutes to past conduct.[9]

■ It is an axiom of fundamental fairness that a person ought not be held liable for conduct which, at the time of its occurrence, was lawful and which the person had a justified expectation would remain so. *See, e.g., Robinson v. Davis Memorial Goodwill Indus.,* 790 F.Supp. 325 (D.D.C.). A law that serves to change liability for a person's primary conduct operates retroactively in contravention of this principle of fundamental fairness. As Justice Story defined it, a retroactive law is one that "takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." Elmer E. Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence,* 20 Minn.L.Rev. 775, 785 (1936) (cited

in *Fray,* 960 F.2d at 1381 (Heaney, J. dissenting)). In essence, defendant complains that plaintiffs here seek to violate the fairness principle by applying new rules to past conduct.

■ The Supreme Court, motivated by this fairness principle, has articulated two rules regarding the retroactivity of statutes to past conduct. The existence of these two rules largely accounts for the two conflicting lines of cases dealing with the retroactivity of the 1991 Act. In *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Court established the principle "that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *See also Thorpe v. Housing Auth. of Durham,* 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969). By contrast, in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), Justice Kennedy, writing for a unanimous Court, held, without citing *Bradley,* that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *See also, e.g., United States v. American Sugar Ref. Co.,* 202 U.S. 563, 577, 26 S.Ct. 717, 719, 50 L.Ed. 1149 (1906). The Supreme Court has thus far declined to reconcile

**8.** *See, e.g., Freytag v. Commissioner,* —— U.S. ——, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764 (1991) (expressing "a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." (quoting *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)); *Mackey v. Lanier Collection Agency & Service,* 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."); *Tarver,* 796 F.Supp. at 250 (relying on this argument in holding the 1991 Act retroactive).

**9.** In an unreported decision, Judge Nordberg suggests a further reason to reject plaintiffs' superfluous language argument. *See Kennedy v. Fritsch,* 796 F.Supp. 306 (N.D.Ill.1992).

There, he observes that both § 109 and § 105 (to which the language in § 402(b) applies) were enacted to overrule prior Supreme Court decisions interpreting provisions of Title VII. Where Congress acts to overrule a Supreme Court interpretation of an existing statute, it is presumed to act retroactively. *See Ayers v. Allen,* 893 F.2d 732, 754–55 (5th Cir.), vacated on other grounds, 914 F.2d 676 (en banc 1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2d Cir.1987); *Board of Educ. of E. Windsor Regional School Dist. v. Diamond,* 808 F.2d 987, 995–96 (3rd Cir.1986). Thus, absent express language making them prospective, § 109 and § 105 (and by extension § 402(b)) would be presumed to be retroactive, irrespective of the prospective or retrospective operation of other portions of the statute. *See Kennedy,* 796 F.Supp. at 347–48.

these two precedents. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (finding, on the facts presented, that it was unnecessary to reconcile *Bowen* and *Bradley* because under either rule clearly expressed legislative intent governs). Where two valid rules co-exist, it not the province of this Court, in the first instance, to exalt one over the other. Rather, the Court must first attempt to reconcile them in a meaningful and reasonable manner.[10] Close scrutiny suggests that the *Bowen* and *Bradley* rules co-exist in passable, if not perfect, harmony when viewed in the context of the principle of fundamental fairness described above. *See Robinson,* 790 F.Supp. 325; *Fray,* 960 F.2d at 1381 (Heaney, J. dissenting).

The question in *Bradley* was whether to apply a new attorneys' fee provision to fees incurred in a school desegregation case before enactment of the statute. The Supreme Court stated that a statute would presumptively be applied retroactively unless the express language of the statute otherwise required or unless such application would result in "manifest injustice" by "depriv[ing] a person of a right that had matured or become unconditional." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. The Supreme Court identified three factors relevant to the determination of manifest injustice: (i) the nature and identity of the parties; (ii) the nature of their rights; and (iii) the nature of the impact of the change of law upon those rights. 416 U.S. at 719–21, 94 S.Ct. at 2020–21. Significantly, these factors all speak to fundamental fairness. Using these factors, the Supreme Court determined that the attorneys' fees provision did not deprive the defendant of a vested or matured right and therefore applied retroactively. Put another way, nothing in the attorneys' fees provision made unlawful that which was previously lawful or altered liability for primary conduct.

Fourteen years later, in *Bowen,* the Supreme Court addressed a different factual situation. There, plaintiffs challenged the retroactive application of Department of Health and Human Services' Medicare cost

10. Whether the Supreme Court will ultimately reconcile these rules or discard one of them is a matter open to speculation. Writing for a plurality in *Kaiser Aluminum,* Justice O'Connor recognized an "apparent tension" between the two rules. 110 S.Ct. at 1577. The four dissenters viewed the tension as "more apparent than real." 110 S.Ct. at 1591 (White, J. dissenting). In his concurrence, however, Justice Scalia found the rules "in irreconcilable contradiction." 110 S.Ct. at 1579 (Scalia, J. concurring). Although concurring in the result, Justice Scalia would have used *Kaiser Aluminum* as a forum "to reaffirm the clear rule of construction that has been applied, except for these last two decades of confusion, since the beginning of the Republic and indeed since the early days of the common law: absent specific indication to the contrary, the operation of nonpenal legislation is prospective only." 110 S.Ct. at 1579, n. 1 (with a qualifying note that a presumption of retroactivity applies to the repeal of punishments).

Admittedly, there is an appealing, elegant simplicity to Justice Scalia's approach. But significantly, his view has not yet been blessed by the majority. Moreover, his solution is not without its own problems. Consider, for example, hypothetical legislation granting jury trials in admiralty cases, where common law has long decreed bench trials. While the Constitution vests certain litigants with a right to trial by jury, parties have no conceivable right or interest in a non-jury trial. No rule of law, liability, or damages, no defense, no remedy, nor any other element of a claim would in any way be affected by this change in the identity of the decisionmaker (although without doubt trial counsel would pursue different trial strategies). There is no reason why such legislation should not apply in cases involving conduct occurring before its effective date, but that are filed afterwards. Justice Scalia's elegant, bright-line solution does not adequately speak to this, or similar, hypotheticals. In this regard, Judge Posner's opinion in *Luddington* is more germane. There, Judge Posner agrees with Justice Scalia that the *Bowen* and *Bradley* rules are "in irreconcilable contradiction." 966 F.2d at 227. But he then proceeds to advocate only "a presumption against retroactive application," observing that "[p]rocedural innovations not likely to bias decision systematically in favor of one litigant rather than his opponent can, without serious affront to the values crystallized in the phrase 'rule of law,' be applied to cases pending when the innovations were adopted; and that is the norm even in criminal cases." *Luddington,* 966 F.2d at 228 (citations omitted). *See also Hallowell v. Commons,* 239 U.S. 506, 508, 36 S.Ct. 202, 202, 60 L.Ed. 409 (1916) (Holmes, J.) (retrospective application appropriate where statute "takes away no substantive right, but merely changes the tribunal that is to hear the case"); *Koger v. Ball,* 497 F.2d 702, 706 (4th Cir.1974) (following *Hallowell*).

recoupment rules that required parties to return to the government reimbursements previously issued under old rules. Writing for a unanimous Court, Justice Kennedy, without citing *Bradley* and without analysis, proclaimed the principle that the retroactive application of the new rule would not be allowed unless the statutory language required it. And he concluded that the statutory and regulatory language at issue did not authorize the Secretary to promulgate retroactive cost-limit rules. 488 U.S. at 208, 215, 109 S.Ct. at 471, 475. Implicit in the *Bowen* holding is the fairness principle. The new reimbursement rule stripped the parties of a vested right. What was once lawful—retaining certain reimbursements made under the old rules—became unlawful.

Read together *Bowen,* viewed broadly, and *Bradley,* viewed narrowly, illustrate the "venerable rule of statutory interpretation" that "statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985). *See also Fray,* 960 F.2d at 1374 ("[T]he first rule of construction is that legislation must be addressed to the future, not to the past ... [and] a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be 'the intention of the legislature.'" (quoting *Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621–22, 11 L.Ed.2d 576 (1964))). In this way, the two rules stand together, supporting and complementing the overarching principle of fundamental fairness.

■ Thus, where, as here, legislative intent is not clearly expressed, the threshold issue in the retroactivity analysis is whether a new law affects substantive, vested rights and liabilities, or, put another way, whether it would be manifestly unjust to apply the new law to pre-enactment conduct. Applying the three-factor *Bradley* test as an analytical aid in this regard, the Court concludes that § 102 does not implicate substantive rights and liabilities. First, as to the nature and identity of the parties, this private dispute clearly seeks to vindicate important public civil rights interests in the elimination of intentional sex discrimination and harassment in the workplace.[11] Second, with respect to the nature of the parties' rights, plaintiffs have a right to recover for injuries for which defendant is liable under Title VII. As for defendant, although it has a right to conduct its business in accordance with current laws, it can not be said to have a vested or matured right in either a bench trial,[12] or in the limitation of plaintiffs' remedies for injuries for which it is found liable.[13] Finally, and most significantly, new and unanticipated obligations are not imposed on defendant. *See Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. Nothing in § 102 of the 1991 Act, providing for jury trials and expanded remedies, changes the definition or nature of the conduct proscribed by the Act. Intentional discrimination was unlawful at the time of the alleged harassing conduct, and defendant

**11.** *See Fray,* 960 F.2d at 1381 ("this case involves civil rights, undisputable a 'great national concern' that merits a presumption of retroactivity.") (Heaney, J., dissenting) (citation omitted); *Assily,* 791 F.Supp. at 863 ("this case raises a matter of great national concern—remedying intentional discrimination"); *Robinson,* 790 F.Supp. at 330 ("This Court agrees that when a private plaintiff brings a suit designed to rid the job market of intentional race and gender discrimination, the public at large is benefitted.... Thus, the presumption of retroactivity is merited according to this first factor."); *Stender,* 780 F.Supp. at 1307 ("it [Title VII case] also involves matters of great public concern—remedying race and sex discrimination and promoting equality. Thus, this first factor weighs in favor of the retroactive application of the 1991 Civil Rights Act."); *Mojica,* 779 F.Supp. at 98 (private Title VII suits "involve matters of substantial public concern").

**12.** *See, e.g., King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991) (holding that a jury trial is available under the Seventh Amendment and the 1991 Act).

**13.** *See Assily v. Tampa Gen'l Hosp.,* 791 F.Supp. at 864 (M.D.Fla.) ("Defendant has no 'matured' or 'vested' right in the previously existing remedial scheme of Title VII."); *Robinson,* 790 F.Supp. at 330–32 (same). *Cf. Koger v. Ball,* 497 F.2d 702, 706 (4th Cir.1974) (no vested right in transfer of jurisdiction from executive to the judiciary).

had an absolute obligation at that time to refrain from perpetrating, or permitting its employees to perpetrate, such conduct. What is indisputably affected is the potential amount defendants may have to pay if found liable for intentional discrimination. The ante has been, in the vernacular, "upped". But this increased economic risk does not mean that the actual harm resulting from unlawful intentional discrimination has changed. Rather, an "artificial ceiling" has been lifted. *Cf. Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 94 (D.C.Cir.1980) (noting, in a worker's compensation case, that "[r]emoving the artificial ceiling [on the recoverable amount], therefore, creates no injustice. It instead removes an obstacle to fair treatment....), *cert. denied,* 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980). As a result, defendant, if liable for intentional discrimination, is required to bear more accurately the full cost of the injury inflicted, or, in other words, to make plaintiffs more nearly whole.[14] *See, e.g., Tarver v. Functional*

*Living, Inc.,* 796 F.Supp. 246, 250 (W.D.Tex.1992) ("The behavior of the wrongdoers is no different than it would have been under the previous law; the difference is that the Civil Rights Act of 1991 allows the Plaintiffs to be fully compensated for the damages they have suffered...."). *See generally Robinson,* 790 F.Supp. at 332.

In sum, the retroactivity analysis leads to the conclusion that § 102 of the 1991 Act, providing for jury trials and compensatory and punitive damages, does not affect any of defendant's substantive rights or liabilities. No manifest injustice results from its retroactive application. And the result reached here is consistent with the Fourth Circuit's decision in *Koger,* 497 F.2d at 706 (Equal Employment Opportunity Act case in which the court stated that "[p]rocedural statutes that affect remedies are generally applicable to cases pending at the time of enactment" unless "it will work manifest injustice by destroying a vested right").[15] As the panel there remarked, in

---

**14.** In his recent decision in *Luddington,* Judge Posner, in holding that the 1991 Act does not apply retroactively, has this to say:

> The amount of care that individuals and firms take to avoid subjecting themselves to liability whether civil or criminal is a function of the severity of the sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy behind the ex post facto clause and also behind the interpretive principle that presumes that a new civil statute applies only to conduct that occurs after its effective date.

*Luddington,* 966 F.2d at 229. Defendant argues vehemently along these same lines. But the difficulty is that Title VII, under which plaintiffs sue, propounds an intentional discrimination standard of liability, not a negligence standard. Judge Posner's view seems valid in the context of negligent conduct, but not in the context of intentional conduct. Congress surely did not intend for employers to perform a cost-benefit analysis to decide whether to engage in or permit illegal discriminatory conduct. Rather, Congress plainly meant that no cost-benefit ratio could justify unlawful discrimination. *See Robinson,* 790 F.Supp. at 332 ("It is no answer for an employer to claim that had Section 102 been enacted before the conduct occurred, he would have weighed the consequences of his discriminatory conduct more carefully. What is alleged in this case is not negligence, but intentional discrimination. The law has never

countenanced that an employer may weigh the legal consequences of his discrimination and choose to continue his unlawful conduct. An employer cannot pay for the right to discriminate because no such 'right' has ever existed.").

**15.** *See also, e.g., Lussier v. Dugger,* 904 F.2d 661, 665 (11th Cir.1990) (applying Civil Rights Restoration Act retroactively on the ground that procedural and remedial statutory changes apply retroactively); *In re Resolution Trust Corp. and Ward v. Resolution Trust Corp.,* 888 F.2d 57, 58 (8th Cir.1989) ("If a case is still pending when the new statute is passed, new procedural or jurisdictional rules will usually be applied to it."); *Hastings,* 628 F.2d at 93 ("where Congress fails to make its intention absolutely clear, courts are much more inclined to apply retroactively amendments directed at the remedy rather than changes in the substantive rights."); *Womack v. Lynn,* 504 F.2d 267, 269 (D.C.Cir. 1974) (adopting *Koger* reasoning in an employment discrimination case). Defendant suggests that the Fourth Circuit's more recent ruling in *Leland v. Federal Ins. Adm'r,* 934 F.2d 524 (4th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991), in which the panel followed *Bowen,* casts doubt on the continuing validity of *Koger's* reasoning. But *Leland* is distinguishable from *Koger. Leland* involved a new law (the National Flood Insurance Act) that the panel found distorted the parties' fixed rights. In other words, the law affected substantive rights and liabilities. Moreover, rather

a suit for race discrimination in federal employment, "the government has no vested right to discriminate against its employees on the basis of race." 497 F.2d at 706. This principle has equal force with respect to intentional gender discrimination by private employers under Title VII.

Accordingly, the Court holds that § 102 of the 1991 Act applies here, where defendant's conduct occurred before the Act's effective date, but plaintiffs filed their complaint afterwards. Therefore, defendant's motion to dismiss should be denied.

An appropriate Order will issue.

than rejecting *Bradley,* the panel applied it in a footnote, reaching the same result. 934 F.2d at

